**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Bryant Thomas Tremblay


      v.                                    Case No. 18-cv-381-JL

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


**REPORT AND RECOMMENDATION**

    Pursuant to 42 U.S.C. § 405(g), Bryant Thomas Tremblay
moves to reverse the Acting Commissioner's decision to deny his
application for Social Security disability insurance benefits,
under Title II of the Social Security Act, 42 U.S.C. § 423.
(Doc. No. 8).  The Acting Commissioner, in turn, moves for an
order affirming  her decision.  (Doc. No. 10).  Those motions
are before this magistrate judge for a report and
recommendation.  For the reasons that follow, the decision of
the Acting Commissioner, as announced by the Administrative Law
Judge ("ALJ") should be affirmed.


**I. Applicable legal standard**

    The court limits its review of a final decision of the SSA
"to determining whether the ALJ used the proper legal standards
and found facts upon the proper quantum of evidence."  Ward v.
Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  It

"review[s] questions of law de novo, but defer[s] to the
Commissioner's findings of fact, so long as they are supported
by substantial evidence," id., that is, "such evidence as a
reasonable mind might accept as adequate to support a
conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quotations omitted). "Substantial-evidence review is more
deferential than it might sound to the lay ear: though certainly
'more than a scintilla' of evidence is required to meet the
benchmark, a preponderance of evidence is not." Purdy v.
Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Bath Iron
Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir.
2003)).

Thus, though the evidence in the record may support
multiple conclusions, the court will still uphold the ALJ's
findings "if a reasonable mind, reviewing the evidence in the
record as a whole, could accept it as adequate to support his
conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs.,
955 F.2d 765, 769 (1st Cir. 1991). Ultimately, the court "must
uphold a denial of social security . . . benefits unless 'the
[Acting Commissioner] has committed a legal or factual error in
evaluating a particular claim.'" Manso-Pizarro v. Sec'y of
Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per
curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. Background[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Tremblay's request for benefits. See 20 C.F.R. §§ 404.1520. After determining that he met the Social Security Act's insured status requirements and had not engaged substantial gainful activity after the alleged onset of his disability on December 31, 2015, see 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq., the ALJ analyzed the severity of Tremblay's impairments.  At this second step, the ALJ concluded that Tremblay had the following severe impairments: bipolar disorder and panic disorder with agoraphobia (Admin. R. at 13-14).

At the third step, the ALJ found that Tremblay's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.  (Id. at 14); see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

After reviewing the medical evidence of record, medical opinions, and Tremblay's own statements, the ALJ concluded that Tremblay retained the residual functional capacity (RFC) to

---

[1] The court recounts here only those facts relevant to the instant appeal.  The court incorporates by reference claimant's Statement of Material Facts (Doc. No. 8-2). See LR 9.1(b).

perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> The claimant is capable of simple routine tasks in two hour blocks, but no fast past (sic) production standards. The claimant can adapt to occasional changes in the work setting and engage in occasional decision making. The claimant should only have occasional interaction with the public, coworkers and supervisors.

(Id. at 15).

The ALJ found that, limited in this manner, Tremblay would not be able to perform his past relevant work. (Id. at 22). The ALJ found, however, that Tremblay could perform other jobs that exist in the national economy, such as housekeeping and cleaning, garment sorter, and flagger. (Id. at 23-24). The ALJ accordingly found that Tremblay was not disabled within the meaning of the Social Security Act during the relevant time period. (Id. at 24); 20 C.F.R. §§ 404.1520(g).


## III. Analysis

Tremblay challenges the ALJ's decision on two grounds: 1) that the ALJ erroneously evaluated opinion evidence in formulating his RFC; and 2) that the ALJ erroneously evaluated Tremblay's testimony regarding his symptoms and limitations in forming his RFC. As explained below, the court finds no error.

A.  Opinion evidence
    1.  State agency consultants
        a.  Dr. Burns

Tremblay asserts that the ALJ erred in giving great weight

to the opinion of state agency consultative examiner Thomas F.

Burns, Ph.D., who found that Tremblay had a recurrent mild to

moderate major depression impairment, that he "seems able to

interact with others competently and without significant anxiety

most of the time," and that he seems able to understand and

abide by common work rules and regulations."  (Admin. R. at 446-

48).  Tremblay claims that Dr. Burns reviewed an insufficient

amount of medical evidence and failed to consider the episodic

nature of Tremblay's mental illness.  Tremblay, does not,

however, indicate which records would have changed Burns's

opinion.  See Zackowski v. Berryhill, 2018 DNH 184, 12, 2018 WL

4350276 (upholding weight given to state agency examiner's

opinion where claimant did not point to any evidence suggesting

greater limitations than found by the examiner).

Moreover, there is nothing in the record to suggest that

Dr. Burns did not consider the episodic nature of Tremblay's

condition, or that he "labor[ed] under a misunderstanding

concerning the nature of mental illness."  Baer v. Astrue, No.

2:11-cv-313-DBH, 2012 WL 3042946, at *4 (D. Me. July 2, 2012).

Indeed, his report notes Tremblay's "varying degrees of

depression." (Id. at 448).  Ultimately, Dr. Burns noted that his

examination showed Tremblay's mental status to be normal, and that he had good memory and intact social skills. (Id. at 18). The ALJ concluded that Dr. Burns's opinion was consistent with and supported by the overall record.  The ALJ committed no reversible error.

### b.  Dr. Stenslie

Tremblay next argues that the ALJ should not have given partial weight to the opinion of non-examining state agency consultant Craig Stenslie, Ph.D.  Dr. Stenslie opined that Tremblay could deal adequately with instructions, sustain "an ordinary routine" and "extended attention," could complete a normal work day and week, could work in coordination with others, and could deal adequately with change in a low stress situation."  (Admin. R. at 20, 77-86).  In assigning only partial weight to Dr. Stenslie's opinion, the ALJ ultimately accepted only his finding that Tremblay is limited to low-stress situations.  At the same time, the ALJ rejected Dr. Stenslie's opinion that Tremblay had no limitation on social interactions. Instead Tremblay's RFC recognized Tremblay's limitation and restricted him to only occasional social interaction. (Id. at 15).  The ALJ explained that she reached this conclusion – and partially rejected Dr. Stenslie's opinion – after Tremblay testified that social interaction could be a source of stress

for him.  (Id. at 18, 19, 65).  The ALJ supportably weighed Dr. Stenslie's opinion.

### 2. Claimant's treating providers

Four of claimant's treating physicians completed mental impairment questionnaires.  Each indicated on their respective forms that, inter alia, Tremblay was more severely limited than was eventually reflected in his RFC and that he would miss more than four days of work per month, which would preclude Tremblay from holding a job.  Tremblay asserts that the ALJ gave these opinions insufficient weight.  The court finds no error in the ALJ's assessment of claimant's treating physicians' opinions.

### a. Margaret Bahder, M.D.

Dr. Bahder opined that Tremblay's bipolar disorder caused marked limitations in his ability to understand, remember, and carry out detailed instructions, and an extreme limitation in his ability to deal with the stress of skilled or semi-skilled work. (Admin. R. at 783-84).  She also concluded that Tremblay had marked limitations in his ability to complete a normal workday or week without interruption from his mental health symptoms or cope with normal work stress. (Id. at 784).  "Marked limitations" were defined as those which seriously limited a particular function; "extreme limitations" are those which prevent functioning on a sustained basis. (Id. at 783).

Ultimately, as previously noted, Dr. Bahder concluded that Tremblay's symptoms would cause him to be absent from work more than four days per month.  (Id. at 785).

As a treating physician, Dr. Bahder's opinions are entitled to "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and they are not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  The ALJ must give "good reasons" for the weight assigned to treating physicians' opinion.  Id.

Tremblay argues that the ALJ erred by giving only "little weight" to Dr. Bahder's opinions and by failing to give "good reasons" for doing so.  The court disagrees.  The ALJ observed that Dr. Bahder's opinion was inconsistent with the record as a whole and not supported by progress notes.  (Id. at 20-21).  The ALJ supported this conclusion by citing records from another provider in Dr. Bahder's practice showing various occasions where Tremblay's symptoms were less severe.  (Id. at 21).  The claimant suggests that the ALJ improperly "cherry-picked" records, which obscured the episodic nature of a bipolar disorder. (Clmt. Mem., doc. no. 8-1, at 10).  But as he also concedes, the ALJ also cited "progress notes that have repeatedly shown normal mental status exams findings and periods

of improvement . . ."  (Id.; Admin R. at 21, 503-71).  This does
not reflect "cherry-picking."  The ALJ's reasoning for the
weight assigned to Dr. Bahder is sufficient.

### b. David Schmidt, M.D.

The ALJ also gave "little weight" to a second treating
physician, Dr. Schmidt, who opined that Tremblay had limitations
that exceeded the ALJ's RFC with respect to carrying out
instructions, coping with stress and work attendance. (Admin. R.
at 21).  But as with Dr. Bahder, the ALJ adequately explained
her reasons for the weight assigned to Dr. Schmidt's opinion.
First, the ALJ supportably found that Dr. Schmidt's opinion was
internally inconsistent (Id. at 21).   For example, although Dr.
Schmidt opined that Plaintiff had "marked" limitations in his
ability to interact with others, he also opined that Plaintiff
had only a "mild" limitation using public transportation and
only "moderate" limitations interacting appropriately with the
general public (Id.; Admin. R. at 795).  Next, the ALJ found
that Dr. Schmidt's opinion was inconsistent with the record as a
whole, including Plaintiff's daily activities (Id. at 21).   In
the end, the basis for the weight the ALJ assigned to Dr.
Schmidt's opinion evidence is "adequate" to persuade "a
reasonable mind."  No more is necessary.  Purdy, 887 F.3d at 13.

### c. Shawn Teal, LCMHC

Tremblay next argues that the ALJ erred in giving little weight to mental health counselor Shawn Teal, who also concluded that Tremblay's limitations were more severe than the ALJ allowed for in her RFC determination.  Completing the same form as Drs. Schmidt and Bahder, Mr. Teal opined that Mr. Tremblay's bipolar disorder caused marked limitations in his ability to understand, remember, and carry out detailed instructions and his ability to set realistic goals or make plans independently of others, and an extreme limitation in his ability to deal with the stress of skilled and semiskilled work. (Admin. R. at 790). He further opined that Mr. Tremblay had marked limitations in his abilities to adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, maintain attention for two hour segments, to work in coordination with or proximity to others without being unduly distracted, and to ask simple questions or request assistance, and that he had extreme limitations in his abilities to: (1) maintain regular attendance and be punctual within customary, usually strict tolerances; (2) sustain an ordinary routine without special supervision; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (5) respond appropriately to criticism from supervisors; (6) get

along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (7) respond appropriately to changes in a normal work setting; and (8) deal with routine work stress. (Id. at 790).

Teal is not considered an "acceptable medical source."  See 20 C.F.R. §§ 401.1513 & 416.913.  As such, the ALJ must consider his opinion, but is not required to "give good reasons" for the weight she assigns to those opinions. King v. Astrue, No. 09-337-P-H, 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010). Nevertheless, the ALJ did adequately explain her reasoning. First, the ALJ observed that, overall, the limitations Teal expressed were inconsistent with the longitudinal history of Plaintiff's condition, including examinations that were routinely normal (including Dr. Bahder's benign mental status examinations) and Plaintiff's reports of effective treatment (Id. at 21).  Second, the ALJ correctly emphasized that Teal's opinion was inconsistent with his own treatment notes, which include Plaintiff's admissions that he "had improved mood and functioning" and that "leisure activities have also been more enjoyable" (Id. at 21, 764).

Tremblay's only substantive response to the ALJ's consideration of Teal's opinion is the conclusory assertion that she failed to consider the episodic nature of Tremblay's mental

illness. (Clmt. Mem., doc. no. 8-1, at 12).  But, as noted, the
ALJ explicitly referenced Tremblay's longitudinal medical
history and examinations that were "routinely normal." (Id. at
21).  The court finds no error in the weight the ALJ assigned to
Teal's opinions.

### d. Maryanne Zambella, APRN

Next, Tremblay asserts that the ALJ erred in giving little
weight to Maryanne Zambella, APRN, who treated Tremblay twice in
July and August 2017.  Ms. Zambella opined that Mr. Tremblay's
bipolar disorder caused marked limitations in his abilities to
adhere to basic standards of neatness and cleanliness, maintain
socially appropriate behavior, and interact appropriately with
the general public, and extreme limitations in his abilities to
travel in unfamiliar places and use public transportation.
(Admin. R. at 804).  She further opined that Mr. Tremblay had
marked limitations in his abilities to: (1) set realistic plans
independently of others; (2) deal with the stress of semiskilled
and skilled work; (3) remember work-like procedures; (4)
understand and remember very short and simple instructions; (5)
sustain an ordinary routine without special supervision; (6)
work in coordination with or proximity to others without being
unduly distracted; (7) make simple work related decisions; (8)
complete a normal workday and workweek without interruptions
from psychologically based symptoms; (9) perform at a consistent

pace without an unreasonable number and length of rest periods;
and (10) ask simple questions or request assistance. (Id. at
805).  She opined that Mr. Tremblay had extreme limitations in
his abilities to: (1) carry out very short and simple
instructions; (2) maintain attention for two hour segments; (3)
maintain regular attendance and be punctual within customary,
usually strict tolerances; (4) respond appropriately to
criticism from supervisors; (5) get along with co-workers or
peers without unduly distracting them or exhibiting behavioral
extremes; (6) respond appropriately to changes in a normal work
setting; and (7) deal with routine work stress. (Id.).  She also
concluded that Tremblay would miss more than four days of work
per month.  (Id. at 806).

Tremblay again conclusorily argues that the ALJ failed to
consider the episodic nature of bipolar disorder. (Clmt. Mem.,
doc. no. 8-1, at 12). The court disagrees, as the ALJ
specifically indicated that Zambella's opinion was inconsistent
with other treatment records and Tremblay's longitudinal
history. (Admin. R. at 22).  In addition, although not required
when addressing a non-acceptable medical source, the ALJ gave
detailed reasons for rejecting Zambella's opinions to the extent
they found restrictions more limited than contained in the RFC.
First, as noted above, the ALJ considered that Ms. Zambella's
conclusions were based on only two counseling sessions, both of

which took place (a) within one month of each other and (b) over
a year after the date when Plaintiff claims he became disabled
(Admin. R. at 22, 808-10, 811-13).  Next, the ALJ supportably
found that Ms. Zambella did not provide an explanation or
rationale as to why she found such significant restrictions.
(Id. at 22).  Although the form that Ms. Zambella completed
instructed her to explain or comment on her opined limitations
(id. at 805), she did not do so. (Id. at 806).  In addition, the
ALJ found that Ms. Zambella's opined limitations were
inconsistent with Plaintiff's presentation during the hearing
(Id. at 22).  The ALJ was best situated to evaluate Plaintiff's
presentation face-to-face.  See Boardway v. Berryhill, No. 3:17-
cv-30069-KAR, 2018 WL 4323823, at *7 (D. Mass. Sept. 10, 2018)
(relying on SSA interviewer's face-to-face observations of
claimant).  Finally, the ALJ supportably found that Ms.
Zambella's opinion was inconsistent with her own treatment
notes, including her report of Plaintiff's admission that, since
starting a new medication, he was "stable with new motivation to
do things during the day" (Admin. R. at 22, 812).  Accordingly,
the court finds no error in the ALJ's consideration of Ms.
Zambella's opinion.

B. Claimant's testimony

Tremblay next argues that the ALJ erroneously evaluated his testimony regarding his symptoms and limitations in determining his RFC. (Clmt. Mem., doc. no. 8-1 at 12).  The ALJ ultimately rejected Tremblay's subjective complaints regarding his limitations to the extent the exceeded those in the RFC. (Admin. R. at 17). The court finds no error.

The ALJ concluded that (1) "the record indicates that medication and therapy have been helpful in treating and managing the claimant's symptoms"; (2) "the objective evidence does not support greater functional limitations than assessed in this finding"; and (3) "the claimant is able to engage in a wide range of activities of daily living." (Id. at 17-20).  Tremblay does not dispute the ALJ's analysis of the medical evidence, but instead asserts that her ruling ran afoul of Social Security Ruling 16-3p, 2017 WL 5180304, pursuant to which the ALJ may not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  While Tremblay has accurately stated a portion of the agency rule, the cited portion is followed by a section captioned "Consideration of Other Evidence," 2017 WL 5180304 at *5-8, which describes additional types of evidence.  The record is clear that the ALJ

did not rule "solely" based upon the objective medical evidence, but also considered "other evidence."  In particular, the ALJ noted the following:

1.  Tremblay's statements about his symptoms (Admin. R. at 16-17; <u>see</u> 2017 WL 5180304, at *6 [describing such statements as "Other Evidence"]);

2. findings by the state agency psychologist and consultative examiner (<u>id.</u> at 18, 20; <u>see</u> 2017 WL 5180304, at *7 [describing such findings as "Other Evidence"]);

3. Tremblay's daily activities (<u>Id.</u> at 14, 15, 17, 20; <u>see</u> 2017 WL 5180304, at *7 [describing such activities as "Other Evidence"]); and

4. Tremblay's treatment history (<u>Id.</u> at 13, 16, 17, 18, 19, 20, 21, 22; <u>see</u> 2017 WL 5180304, at *8 [describing such history as "Other Evidence"]).

Against this undisputed backdrop, the court finds that the ALJ did not err in her consideration of claimant's testimony.


## IV.  Conclusion

The court finds that the ALJ's findings are supported by "substantial evidence."  <u>Ward</u>, 211 F.3d at 655.  Because the ALJ has not committed a reversible error in evaluating Tremblay's

claim, his motion for an order reversing the Acting Commissioner's decision, (doc. no. 8), should be denied; the Acting Commissioner's motion for an order affirming her decision, (doc. no. 10), should be granted; and the clerk of the court should be directed to enter judgment in accordance with this order and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

Andrea K. Johnstone
United States Magistrate Judge

January 15, 2019

cc:  D. Lance Tillinghast, Esq.
     Hugh Dun Rappaport, Esq.